UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

UNITED PENTECOSTAL CHURCH          Case No. **10-30872-RBR**
(APOSTOLIC FAITH), INC.,           Chapter 11

      Debtor
_____/

**MOTION OF SECURED CREDITOR, TD BANK, N.A., TO: (A) DISMISS
CHAPTER 11 CASE, OR IN THE ALTERNATIVE,
(B) FOR RELIEF FROM THE AUTOMATIC STAY**

    Secured Creditor, TD Bank, N.A., a national banking association ("**TD Bank**"), pursuant to 11 U.S.C. § 1112(b) and other applicable law, respectfully moves to (A) dismiss this chapter 11 case of the debtor, UNITED PENTECOSTAL CHURCH (APOSTOLIC FAITH), INC. (the **"Debtor" or "United"**) for cause based upon: (i) continuing loss to, and diminution of, the Debtor's estate, (ii) absence of a reasonable likelihood of rehabilitation, (iii) failure to file a disclosure statement and plan within the time fixed by Title 11, (iv) inability to effectuate a plan, and (v) unreasonable delay causing prejudice to creditors; or, in the alternative, (B) grant relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2), to permit TD Bank to proceed with any and all remedies available under applicable non-bankruptcy law, and in support states:

**PRELIMINARY STATEMENT**

    1.    The principal asset of the Debtor in this matter consists of a church located in Sunrise, Florida (the "Property").

2. On April 3, 2009, TD Bank filed a foreclosure action against the Debtor styled *TD Bank, N.A. v. United Pentecostal Church (Apostolic Faith), Inc.*, in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Case No. 09-019538 (the "Foreclosure Action").

3. On the eve of trial in the Foreclosure Action, the Debtor filed this Chapter 11 case on July 21, 2010 (the "Petition Date").

4. The Court should dismiss this case or grant TD Bank relief from the automatic stay because, among other things, (1) the Debtor has not had, and will not have, sufficient revenue to successfully operate or pay ordinary expenses post-petition, much less complete a reorganization and (2) the Debtor lacks any equity in TD Bank's collateral, insofar as the value of the collateral is far less than the almost $5 million owed to TD Bank. Indeed, this case was filed on July 21, 2010, by way of a "bare-bones" petition, with none of the normal planning regarding any financial or operational aspect of the Property, resulting in a severe, unnecessary and inappropriate delay of the Foreclosure Action.

5. ***TD Bank has been extraordinarily patient since the expiration of exclusivity nearly three months ago, without the debtor having filing any plan.*** However, in the approximately seven months since the Petition Date, TD Bank has not been presented with any proposal as to how the Debtor intends to fund operational losses, pay TD Bank's loan, which has matured, or fund maintenance of the Property. The current state of affairs will only result in further wasting of assets and erosion of TD Bank's collateral.

6. At this point - after having been given more than ample opportunity - there is simply no indication that the Debtor has any ability to reorganize or that Chapter 11 will serve any purpose other than to delay TD Bank in exercising its rights in state court. These are precisely the circumstances under which a bankruptcy court should either dismiss a Chapter 11 case, or in the alternative, grant relief from the automatic stay to allow TD Bank to exercise its rights in state court.

## FACTUAL BACKGROUND

**A.    Background**

7. The Debtor's principal asset consists of a church located at 7100 West Oakland Park Boulevard, Sunrise, Florida. The legal description of the property is attached as **Exhibit "A"**.

8. On March 22, 2006, the United executed and delivered a Promissory Note (the "Note") in the original principal amount of FOUR MILLION, FOUR HUNDRED THOUSAND ($4,400,000.00) to Commerce Bank, N.A., the predecessor in interest to TD Bank, N.A. Simultaneous with the execution of the Note, United executed and delivered a Mortgage (the "Mortgage") securing payment of the Note. Copies of the Note and Mortgage are attached as **Exhibits "B" and "C"**, respectively. The Mortgage was recorded on March 31, 2006, in Official Records Book 41729 at Page 790-834 of the Public Records of Broward County, Florida, and mortgaged the real property consisting of two (2) separate parcels (collectively the "Property").

9. On March 22, 2006, United also executed and delivered an Assignment of Leases and Rents ("Assignment of Rents"), a copy of which is attached as **Exhibit "D"**.

The Assignment of Rents was recorded on March 31, 2006 in Official Record Book 41729, at pages 835-849 of the Public Record of Broward County, Florida.

10. United also granted to TD a security interest in, among other things, all fixtures, equipment and tangible property of any nature whatsoever attached to, affixed to, or situated upon or about the property. TD perfected its security interest by filing a UCC-1 (the "UCC-1") Financing Statement which was recorded on March 31, 2006, Official Record Book 41729, at pages 850 -855 of the Public Record of Broward County, Florida. A copy of the UCC-1 is attached as **Exhibit "E"**.

11. The Note, Mortgage, UCC-1, Assignment of Rents and all other loan documents executed in connection therewith, hereafter sometimes shall be referred to as the "Loan Documents."

15. TD Bank owns and holds the Note and Loan Documents.

16. The declaration of Jonathan Rehman, a Sr. Vice President of TD Bank, is attached hereto as **Exhibit "F"**.

17. The Indebtedness worksheet required by the Court's Guidelines for Motions for Relief from the Automatic Stay is attached hereto as **Exhibit "G"**.

18. TD Bank's address for post-petition payments is 5900 N. Andrews Avenue, 2nd Floor, Fort Lauderdale, FL 33309.

19. As of the Petition Date, the Debtor owed TD Bank $5,075,844.93 consisting of the principal balance of $4,232,305.69 interest through the Petition Date of $752,071.93 (interest at the default rate began accruing as of March 14, 2009) and other charges in the amount of $91,312.86.

**B.**     **The Debtor's Defaults and The Foreclosure Action**

20.     The Debtor defaulted under the Note and other Loan Documents, by among other things, failing to pay the monthly principal, interest and other amounts when due.  Thus, TD Bank accelerated the indebtedness due under the Note, which remains unsatisfied.

22.     Pursuant to its rights under the Loan Documents, TD Bank filed the Foreclosure Action, pursuant to which TD Bank has demanded all amounts due under the Note and Mortgage.

**C.**     **The 341 Meeting**

24.     On September 2, 2010, the United States Trustee's office conducted the 341 Creditors' Meeting for this case.  At the 341 Meeting, the Debtor testified as follows:

> a.     the Debtor lost its occupational license due to the building lacking fire sprinklers, which in turn resulted in the closure of a charter school, which had been the main source of the Debtor's income;
>
> b.     the Debtor's membership has dropped significantly as a result of its inability to operate a charter school at the Property, which in turn has negatively impacted its income;
>
> c.     the Debtor's property insurance is insufficient to cover the outstanding debt owed to TD Bank; and
>
> d.     the Debtor has failed to maintain the sidewalks, landscaping and otherwise comply with the City of Sunrise building code, resulting in the issuance of various code violations.

**D.**     **The 2004 Examination**

26.     On October 28, 2010 and November 12, 2010, the Debtor appeared for a 2004 examination and testified as follows:

5

    a.    Its limited income is now largely dependent upon the voluntary contributions of its members;

    b.    The Debtor has not sought to sell the Property, merge with another congregation nor obtain financing to operate the Property;

    c.    The Debtor has no defined plan of reorganization and no reasonable prospect of ever filing a confirmable plan of reorganization;

    d.    Contrary to the express language of the Mortgage, the Debtor has failed to identify TD Bank as a loss payee to its insurance company;

    e.    Contrary to the express language of the Mortgage, the Debtor has failed to address various building code violations for the Property;

    f.    The Debtor has occasional nominal revenue from its rental of portions of the Property to third parties for parties. However, there are no signed contracts for such rentals.

**E.**    **Relief Requested**

26.   This case should be dismissed pursuant to 11 U.S.C. § 1112(b) for "cause." Alternatively, the Court should grant TD Bank immediate relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2). The Debtor is losing money and certainly cannot demonstrate an ability to effectuate a plan within any reasonable period of time. The Debtor is simply not viable as a going concern, and cannot show how a plan of reorganization might be funded.

**I.**    **The Court should dismiss this case for "cause" pursuant to 11 U.S.C. § 1112(b).**

27.   This case should be dismissed pursuant to 11 U.S.C. § 1112(b). Specifically, the grounds for dismissal here include: (1) substantial or continuing loss to or diminution of the estate, (2) the absence of a realistic possibility of reorganization,

and, hence (3) the inability to propose, confirm, and substantially consummate a Chapter 11 plan.[1]

28. Courts have asserted that § 1112(b)(1) codifies a two-prong test involving continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation as cause to dismiss or convert a Chapter 11 case. *In re Northeast Family Eyecare, P.C.*, 2002 WL 1836307 (Bankr. E.D. Pa. 2002) (*quoting In re Denrose Diamond*, 49 B.R. 754, 756 (Bankr. S.D. N.Y. 1985)). "Obviously, if the debtor has a negative cash flow after entry of the order for relief in the chapter 11 case, the [elements of § 1112(b)(1) are] satisfied," and "negative cash flow postpetition and an inability to pay current expenses satisfies the elements of §1112(b)(1)." *Northeast Family Eyecare*, 2002 WL 1836307 (*quoting In re Route 202 Corporation*, 37 B.R. 367, 374 (Bankr. E.D. Pa. 1984)); *see also In re The V Companies*, 274 B.R. 721, 724 (Bankr. N.D. Ohio 2002) ("This element can be satisfied by proving that the debtor has incurred losses or maintained a negative cash flow position after the entry of the order for relief"); *In re Schriock Construction, Inc.,* 167 B.R. 569, 575 (Bankr. D. N.D. 1994) (negative cash flow is ground for dismissal); *In re Galvin*, 49 B.R. 665, 669 (Bankr. D. N.D. 1985) ("Post-petition negative cash flow is considered by courts to be evidence of continuing losses required by section 1112(b)(1). Here, the Debtor is in a negative cash flow position as it does not have sufficient funds to pay TD Bank and has not made a single payment to TD Bank **since the fall of 2008**.

---

[1] The Debtor has been delinquent in filing timely its monthly operating reports.

29. Among other things, it appears that the Debtor filed this bankruptcy case with no strategy for reorganization, resulting in significant harm to TD Bank as the value of the Property has plummeted.  A recent appraisal obtained by TD Bank concludes the "as is" market value of the subject property, as of October 4, 2010, was $3,700,000, well over a million dollars less than the debt owed to TD Bank.  A copy of the appraisal obtained by TD Bank from Clobus, McLemore & Duke, Inc. is attached as **Exhibit "H".**

30. The second prong of Section 1112(b) is met where there is an absence of a reasonable likelihood of rehabilitation.  *See Northeast Family Eyecare*, 2002 WL 1836307.  "'[R]ehabilitation' does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include a complete liquidation." *Id.*  "Rehabilitation of a debtor's estate implies the re-establishment of a sound financial basis, a concept which necessarily involves establishing a cash flow from which current obligations can be met." *In re Kanterman*, 88 B.R. 26, 29 (Bankr. S.D. N.Y. 1988).  *See also The V Companies*, 274 B.R. at 724; *Schriock Construction*, 167 B.R. at 575.  There is nothing in this bankruptcy case to reasonably suggest the Debtor will achieve financial viability in the near future, or that it will suddenly be able obtain financing or revenue.

31. Cause to dismiss is also found under Section 1112(b), since, in this case, "a feasible plan is not possible." *Northeast Family Eyecare*, 2002 WL 1836307.  Courts have consistently held that "dismissal of a Chapter 11 bankruptcy case is appropriate where the Court finds that a proposed plan is not possible." *Galvin*, 49 B.R. at 669.  *See also The V Companies*, 274 B.R. at 724.  When considering the elements of Section 1112(b)(2), "the court must be satisfied that it is probable that a plan is workable and will

cash flow." *Schriock Construction*, 167 B.R. at 575. "Sincerity, honesty and willingness are not sufficient to make the plan feasible and neither are visionary promises." *In re Clarkson*, 767 F.2d 417 (8th Cir. 1985). In this case, the Debtor has failed to propose any plan of reorganization - let alone a plan that has a reasonable possibility of being confirmed within a reasonable time. 11 U.S.C. § 362(d)(3).

32.   The Debtor has not shown, however, that it even has the ability to make monthly payments to TD Bank while continuing to operate the Property. A plan of reorganization is therefore simply not feasible for the Debtor. The Debtor has not demonstrated any ability to reorganize, and in such a case there is cause sufficient to dismiss the case. *See MacElvain v. Internal Revenue Service*, 180 B.R. at 673.

### III.  Alternatively, Stay Relief Is Warranted Pursuant to 11 U.S.C. § 362(d)(2)

33.   In the alternative to dismissal, TD Bank seeks stay relief because the Debtor lacks any equity in the Property and the Property is not necessary to an effective plan of reorganization. Section 362(d) provides, in pertinent part, that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (d)(2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> > (A)   the debtor does not have an equity in such property; and
> >
> > (B)   such property is not necessary to an effective reorganization; . . .

34. The facts here satisfy the first prong of this test for stay relief because, "taking into consideration the value of the property and all encumbrances against it," there is no equity in the Property. *In re Yanks*, 37 B.R. 394, 398 (Bankr. S.D. Fla. 1984). "[T]he proper method in determining lack of equity in conjunction with a motion seeking relief from the automatic stay under § 362(d)(2)" is to consider the combined indebtedness of the debtor. *In re South County Realty, Inc. II*, 69 B.R. 611, 614 (Bankr. MD. Fla. 1987). Here, the value of the Property is less than the amount of the TD Bank debt as reflected in the appraisal obtained by TD Bank. See Exhibit H.

35. The circumstances here satisfy the second prong of the test for stay relief in Section 362(d)(2) because the Property is not necessary to an effective reorganization. "For property to be 'necessary to an effective reorganization,' within the meaning of Section 362(d)(2)(B), the debtor must show that an effective reorganization is even possible." *In re Bellina's Restaurants II, Inc.*, 52 B.R. 509, 512 (Bankr. S.D. Fla. 1985) (granting stay relief where the debtor lacked any equity in the property and the debtor failed to show that an effective reorganization was even possible). "The key word here is 'effective.' The Debtor must show the existence of a reasonable possibility of a successful reorganization within a reasonable period of time." *Id.* at 512. Here, the Debtor has not met its burden of proving that a plan of reorganization is even possible within any period of time, and it has no equity in the Property; therefore, stay relief is warranted under Section 362(d)(2) of the Bankruptcy Code.

Case No. 10-30872-RBR
Chapter 11

### III.  Stay Relief Pursuant to 11 U.S.C. § 362(d)(1) is Also Warranted to Permit TD Bank to Pursue the Foreclosure Action

36.  TD Bank also requests the Court grant it relief from the automatic stay for "cause" under Section 362(d)(1) of the Bankruptcy Code.

37.  Several factors are present in this case which constitute "cause" sufficient to lift the automatic stay under Section 362(d) including allowing the Foreclosure Action to continue in the state Court.  The decision whether to grant relief from the automatic stay to allow litigation to continue in another forum is within the sound discretion of the bankruptcy court.  *See In re Murray Industries*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990) (*citing In re Castle Rock Properties*, 781 F.2d 159 (9th Cir. 1986)).  "In determining whether to lift the automatic stay, the courts have generally considered the prejudice to the debtor's reorganization efforts, conservation of judicial resources, and prejudice to the movant."  *Murray Industries*, 121 B.R. at 636-37 (citations omitted).[2]

38.  If relief is not granted and the Foreclosure Action is not adjudicated in the state court, TD Bank will be severely prejudiced by duplicating the expenses already incurred in the Foreclosure Action.  To begin the litigation anew in the bankruptcy court would also constitute a waste of judicial resources.

---

[2] Furthermore, the legislative history to Section 362(d) provides:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin when no great prejudice to the bankruptcy estate would result in order to lead the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5836, 6297.

11

Case No. 10-30872-RBR<br>Chapter 11

39. For all of the foregoing reasons, TD Bank believes that the hardship to it caused by the automatic stay exceeds any prejudice to the Debtor that would be caused by granting stay relief, and that stay relief is therefore warranted.

40. TD Bank files this Motion without prejudice to its right to seek stay relief on additional grounds at a later date, including without limitation pursuant to 11 U.S.C. § 362(d)(3)

WHEREFORE, TD Bank respectfully requests entry of an order (A) dismissing the case; *or in the alternative*, (B) granting relief from the automatic stay to permit the TD Bank to proceed with the Foreclosure Action; and (C) granting such other further relief as the Court deems appropriate.

Dated February 15, 2011.

> GREENBERG TRAURIG, P.A.
> Attorneys for TD BANK, N.A,
> 401 E. Las Olas Blvd
> Suite 2000
> Telephone: (954) 765-0500
> Facsimile: (954) 765-1477
>
> By: /s/ Jon L. Swergold
> JON L. SWERGOLD
> Florida Bar No. 0108510
> swergoldj@gtlaw.com
> SCOTT M. GROSSMAN
> Florida Bar No. 0176702
> grossmansm@gtlaw.com

Case No. 10-30872-RBR<br>
Chapter 11

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____/s/ Jon L. Swergold_____<br>
JON L. SWERGOLD

Case No. 10-30872-RBR<br>Chapter 11

## SERVICE LIST

**Electronic Mail Notice List**

The following is the list of parties who are currently on the list to receive e-mail notice/service for this case:

Scott M. Grossman on behalf of Creditor TD Bank, N.A.
grossmansm@gtlaw.com,
jacksont@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Chad T Van Horn on behalf of Debtor United Pentecostal Church (Apostolic Faith), Inc.
chad@brownvanhorn.com,
debbie@brownvanhorn.com;david@brownvanhorn.com;daniel@brownvanhorn.com;dtdlaw@aol.com;Lauren@brownvanhorn.com;kate@brownvanhorn.com;Jacqueline@brownvanhorn.com;justin@brownvanhorn.com;sheila@brownvanhorn.com;dane@brownvanhorn.com;hollie@brownvanhorn.com

**Manual Notice List**

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

United Pentecostal Church
PO Box 5504
Ft. Lauderdale, FL 33310

FTL108,015,702 1